## Case No. 17,351.

### WEEKS v. The CATHARINA MARIA. JURGENSON v. SAME.

[2 Pet. Adm. 424.][1]

District Court, D. Pennsylvania. 1790.

SALVAGE COMPENSATION — CARGO SAVED FROM WRECK—SEAMEN'S WAGES IN CASES OF WRECK.

[1. One third part awarded as salvage in a case where the vessel was lost and part of the cargo saved, and where the salvage was not attended with extraordinary hazard or difficulty.]

[Cited in Hand v. The Elvira, Case No. 6,015; Smith v. The Joseph Steward, Id. 13,070.]

[2. The general rule that if a ship perishes the mariner loses his wages does not apply when any part of the cargo is saved. He is entitled to his wages out of the goods saved, at least for the time served before loss, and so long thereafter as his attention and services are needed in caring for the goods saved.]

[Cited in The Two Catherines, Case No. 14,288; Lewis v. The Elizabeth & Jane, Id. 8,321; Poland v. The Spartan, Id. 11,246; The Dawn, Id. 3,666.]

In admiralty.

BY THE COURT. Two libels have been filed in the case of the scow Catharina Maria. The one [by Benj. Weeks] claiming a reasonable salvage for goods preserved from a wreck at sea, and the other [by Jurgen Jurgenson] suing for mariners' wages; the voyage having been finished by the sinking of the vessel. The circumstances of the case appear to be as follows: The scow Catharina Maria, Peter Moller, captain, being on her return voyage from St. Croix, to Copenhagen, was on the twenty-first of September last, overtaken with heavy storms, in which she suffered so long and so much, that on the eighth of October, she became a mere wreck, and no hope of safety was left. In this extremity Captain Benjamin Weeks, belonging to and bound for Philadelphia, came up with the distressed ship, and received the Catharina's crew on board his vessel. The wind, however, soon after moderated, so that Captain Weeks was enabled by the assistance of his own crew to take from the wreck 6 pipes and an ullage of Madeira wine, 6 cases of the like wine, 12 bales of cotton, and sundry articles of rigging, after which the Catharina Maria sunk and was lost.

The first object is, to ascertain what reasonable salvage should be allowed to Captain Weeks on the goods and materials thus saved and brought into port; and secondly, what wages the mariners of the lost vessel are entitled to, on this unfortunate conclusion of their voyage. As to the first, salvage is an allowance made by the consent of all nations and all laws, for saving a ship or goods from the danger of the seas, from fire, pirates or enemies. Lex Rhod. 46; Lex Mercat. 146; Park, Ins. 147; Wesk. Ins. 488; and other authors on the subject. The quantum, however, of this allowance cannot, from its own nature, be fixed by any maritime rule or statute; because the reason of the law must be governed by the circumstances of the case, which will be various, according to the hazard, trouble and expense of the salvage. "If only the ship perishes, and the goods are saved, in that case, the goods ought to pay a proportion of a fifth or tenth penny, according to the easy or difficult winning or saving of the said goods." Moll. de J. Mar. bk. 2, c. 5, § 4; Lex Oler. c. 4. So that the hazard or trouble should be the rule of salvage. In regulating the discretion of the courts in such cases, oppressive salvage, such as may accumulate distress on the unfortunate, should be avoided on the one part, and on the other a generous allowance should be the reward of those who exert themselves in the cause of humanity.

By these principles I have considered the circumstances of the present case, and finding by the testimony, that the salvage has not been attended with any extraordinary hazard or difficulty, I adjudge to Captain Benjamin Weeks, one-third part of the goods and materials saved from the wreck of the Catharina Maria, free of all legal costs or charges whatever. As to the mariners' wages, it is a general rule of law, that if the ship perishes the mariner loses his wages: because, if they are allowed their wages, their best endeavours may be wanting to preserve the ship. But this seems to be rather a rule of policy than of natural justice; and is generally restricted to cases of a total loss, and before any port of delivery hath been attained. For if any of the goods have been saved and delivered in a place of safety, the mariners do not lose their wages for the whole voyage. 1 Ld. Raym. 739; Keble, 831; Park, 592. However doubtful the law may be, with respect to the mariners' wages in cases of a total loss of ship and cargo, there can be none, when a considerable part of the goods have been brought into port, and delivered up to a competent authority to take charge of them. So long as the duty of the mariners calls for their attentions and services in the preservation of the ship or cargo, or of any part thereof, so long does their lien for wages inure, in proportion at least to the value of the property so saved. I adjudge, that the libellants have and receive their wages according to the ship's articles to the twenty-eighth day of October last, at which time, the remains of the wrecked cargo and rigging were delivered into the custody of the marshal of this court.

See cases of salvage, Warder v. La Belle Creole [Case No. 17,165]; Taylor v. The Cato [Id. 13,786]; Bell v. The Ann [Id. 1,245]; Bond v. The Cora [Id. 1,620]. In the case of Taylor v. The Cato [supra], the mariners of the Cato were allowed wages from the goods saved.

---

[1] [Reported by Richard Peters, Jr., Esq.]